REID, Judge.
This is an action brought by Mrs. Mercedes F. Picou and Melvin A. Picou resulting from an automobile accident which occurred in the City Park of Houma, Louisiana, at approximately 10:00 A.M. on May 13, 1962. Plaintiff Appellee, Mrs. Mercedes F. Picou, was driving a station wagon on that day when the front wheel of the vehicle struck a ditch located in the park. Mrs. Picou sued for personal injuries which she suffered in the accident while Mr. Picou sued for his wife’s medical expenses and the physical damages to the station wagon.
The record shows that Moffet Road, the road ordinarily used to reach the park entrance, was under construction and barricades had been placed on the said road, thus necessitating a detour.
The defendants named in the suit are the following:
Terrebonne Construction Company, Inc. and its insurer, New Amsterdam Casualty Company. They were sued under the proposition that the defendant Terrebonne Construction Co., Inc. had placed detour signs in such a position as to lead motorists into a dangerous situation and had failed to place warning signs or barricades or other guards to warn motorists of the ditch into which plaintiff’s car ran.
The City of Houma, the Police Jury of Terrebonne Parish and its insurer, The Maryland Casualty Company were sued on the ground they were joint owners of the park and were negligent in having an unguarded ditch to remain in an area open to the public for use of automobile traffic and without placing any warning signs to that effect.
*651 The Houma-Terrebonne Airport Commission and its insurer, United States Aviation Underwriters were sued under the proposition that the Houma-Terrebonne Airport Commission had been created by the City of Houma and the Police Jury for the purpose of maintaining the entire air station of which the park was a part and that it had negligently allowed the ditch to remain in a place which was open to automobile traffic.
The City of Houma was also sued as lessee under a written lease from the Houma-Terrebonne Airport Commission of that portion of the airport which was used for a park.
The Houma-Terrebonne Airport Commission filed a Third Party Petition against the City of Houma alleging that it had leased back to the city the park proper where the accident occurred, which said lease contained an indemnity provision.
The Houma-Terrebonne Airport Commission, its insurer and the Police Jury of the Parish of Terrebonne and its insurer filed a Third Party Petition against the defendant, Terrebonne Construction Co., Inc., alleging that the construction company’s negligence was the sole and proximate cause of the accident.
Answers were filed on behalf of the various defendants denying liability.
By Stipulation of Counsel the third party actions were referred to the Court for decision, leaving to the jury only the question of the negligence of Mrs. Picou and the amount of damages.
After some deliberation the jury rendered a verdict declaring that the Terrebonne Construction Company, Inc. was negligent and that this negligence was a proximate cause of the accident; that the City of Houma as lessee of the property was negligent and that this negligence was a proximate cause of the accident; that the Houma-Terrebonne Airport Commission was negligent and that this negligence was a proximate cause oí the accident; the Police Jury of the Parish of Terrebonne was not negligent and the plaintiff, Mrs. Picou, was partially negligent and that her negligence was a partial proximate cause of the accident. Upon this jury’s findings the defendants urged the Court to enter an entry of judgment for them on the verdict on the ground the findings of the jury in regard to Mrs. Picou showed that she was guilty of contributory negligence, which barred her recovery.
The Trial Judge over the objection of the defendants, however, sent the jury back with additional instructions requiring them to bring in a yes or no answer to the interrogatories concerning the negligence of the plaintiff and after some deliberation returned, and in answer to the Interrogatory:
“Was Mrs. Picou negligent?”
answered, “Yes.” and in answer to the Interrogatory:
“If so, was this negligence a proximate cause of the accident?”
answered, “No”
The jury rendered a verdict in favor of Mrs. Picou in an amount of Five Thousand and no/100 ($5000.00) Dollars and in favor of Mr. Picou in the amount of Sixteen Hundred and no/100 ($1600.00) Dollars.
On January 8, 1964 a judgment was rendered, read and signed in accordance with the said verdict as set forth in the verdict in favor of the plaintiffs, Mr. and Mrs. Picou, against the defendants, The Terre-bonne Construction Company, Inc., and its insurer, New Amsterdam Casualty Company ; The City of Houma, Louisiana; The Houma-Terrebonne Airport Commission and its insurer, The United States Aviation Underwriters, jointly, severally and in solido.
The Trial Court in passing upon the various Third Party Petitions as per stipulations held that the negligence of all three defendants contributed to the accident. It is from this judgment that this appeal is lodged.
*652 Plaintiffs filed an answer to the appeal seeking' an increase in the award.
Defendants maintain that the Trial Judge erred in not entering a judgment for the defendants after the jury had found that Mrs. Picou had been partially negligent, that her negligence was a partial cause of the accident; that the Trial Judge erred in sending the jury back in deliberation and the jury’s subsequent finding that Mrs. Picou was negligent should have barred her recovery on the ground she was contributorily negligent, despite the jury’s finding that her negligence was not the proximate cause of the accident. In addition, there are various allegations of error concerning the finding of the Trial Judge in regard to the various Third Party Petitions.
The question of the negligence of the plaintiff is, of course, central to the issue involved herein in that if the plaintiff was guilty of contributory negligence then of course, her action and that of her husband would be barred.
The record discloses that the day of the accident was a clear day and that the plaintiff, together with several guest passengers were on their way to the park. They were proceeding down Moffet Road into which the road that leads to the main entrance to the park lies, and finding that portion of Moffet Road which would have to be traveled in order to reach the main entrance to the park was being resurfaced, it was necessary for Mrs. Picou to make a detour. Following the detour, Mrs. Picou arrived at a point further down Moffet Road wherein she saw that immediately to her left was another barricade located on the other end of the construction site, that is the north end, which prevented her from reaching the main entrance to the park from that direction. Mrs. Picou testified that upon reentering Moffet Road at the end of the detour she could have turned to the right and reached the park safely from the rear, instead, as she testified, she and the other ladies in the car decided to cross Moffet Road and proceed along an unnamed blacktop road, which ran for 13S feet wherein it ended facing the park and then proceed to go across 125 feet of shells and grass into the park, wherein she ran into the ditch.
The record further shows that there was a twenty foot wide blacktop road running to the left off of the unnamed blacktop road which Mrs. Picou took, which said road led to the main entrance of the park, and which, according to the testimony, was a road used by visitors to the park, who followed the same detour as did Mrs. Picou. Mrs. Picou testified that she was aware o<f the said road but instead of making this turn to the left she elected to drive straight ahead, past the blacktop road and drive over the shells and grass into the park. After traveling approximately 128 feet over the shells and grass Mrs. Picou ran into the ditch causing the injuries to herself.
Both Mrs. Picou and Mrs. Hebert, who was riding in the front seat with Mrs. Picou, testified that they did not see the ditch before the accident. However, Officer Freddie Ponville of the City of Houma Police Department testified from his report that Mrs. Picou stated she was driving down the road and when she saw the ditch it was too late and she applied her brakes but the car shifted.
Mrs. Picou testified she was aware of the fact that when she left the shell area she was not on a roadway, testifying as follows:
“Q: You had been to this park from 8 to 12 times previously, hadn’t you?
“A: The year before.
“Q: Now, this grassy area after the shell apron wasn’t a road, was it, as to appearances I mean?
“A: There’s no actual road in the park. I mean the car makes it’s own path.
“Q: I’m asking you about this grassy area after the shell apron?
“A: There was no indication that there was a road there. There was no indication that a car couldn’t pass either.
*653 Q: I believe you said in your deposition on page.34 in answer to this question:
“Q: I understand you kept going forward across Moffet Road and you came to an area which was blacktopped, then shell and then after that plain grass, is that correct?
"A: Yes sir.
“Q: The plain grass didn’t give the sign of being a roadway? You gave those answers?
“A: That’s right.
“Q : And that’s the truth, is that right?
“A: Yes.
“Q : You weren’t lost at that time, you knew where you were going?
“A: Yes sir.”
In addition Mrs. Picou testified that she had been in the park many times and she was aware that there were gullies in the said park, which was the reason she slowed down to second gear. She further stated that approximately one year before the accident she had broken off a tail pipe while traveling through the park, and admitted that while traveling over the grassy area she was on the lookout for gullies. Her testimony in this regard is as follows:
“Q: Now, you say that once you started into this area and along this course that you decided to follow into the park that you were going I believe you said perhaps 5 or 10 miles an hour, no more than 10 miles per hour, is that correct?
“A: Yes sir.
“Q: Why were you going that slow?
“A: I had no reason to want to go faster, because I knew it wasn’t level ground, I mean, smooth surface. It was irregular surface.
“Q: Again, how is it that you knew that it wasn’t level ground ?
“A: From the previous year having been to the park.
“Q: Had you driven a car yourself at that time ?
“A: Yes, sir, I had.
“Q: And you had had experience with some gullies and ditches at that time ?
“A: Gullies, yes, sir.
“Q: And it was on that occasion that you encountered one gully deep enough driving your car to break your tail pipe ?
“A: Yes sir, the car had dragged at the back end, and I had broken the tail pipe.”
It is, therefore, clear from the testimony of Mrs. Picou that after she left the short stretch of blacktop she knew that she was not on a roadway and the ground that she was traversing was uneven, contained gullies and was dangerous.
Mr. Norris Ledet, the Superintendent in charge of the resurfacing of Moffet Road for the Terrebonne Construction Company, Inc. testified the ditch in which Mrs. Picou injured herself had been there for some years and that it was clearly visible to anyone driving a car. He further testified that the job of resurfacing Moffet Road began on May 10, 1960 and ended on May 20, 1960 and that he had not noticed any traffic going into the shell area that Mrs. Picou went over, but that traffic following the same detour that Mrs. Picou followed would use the short blacktop road veering to the left which led to the main entrance. Mrs. Picou testified she took the route she took because it was the shortest way to the picnic area and that it would have served no purpose to have taken the blacktop road to the left, which led to the main entrance to the park, as they would have made a long route to the area in the park she wished to go. She admitted had she taken the blacktop road that led to the main entrance she would have been on a paved roadway, and it would not have been necessary for her to look for gullies.
*654 The record discloses the date of the accident was Mother’s Day and that the park was quite filled with people. There is no evidence in the record whatsoever to suggest that any other party took the route that Mrs. Picou took and ran into the ditch that she ran into. There is no question in the minds of this Court but that while the various defendants might have been guilty of negligence, Mrs. Picou was guilty of contributory negligence in such a degree as would bar her recovery.
The Court is also impressed by the fact that the trial jury after two deliberations held Mrs. Picou guilty of negligence and with this finding of fact this Court cannot disagree. However, after once finding negligence there is no question but the facts in this case clearly show that this negligence of Mrs. Picou was a proximate cause of the accident. There is no evidence in the record which would indicate that Mrs. Picou was misled by the detour, since she freely admitted that she knew of other avenues of approach to the park. In addition, Mrs. Picou was aware of the fact that when she left the blacktop portion of the road upon which she traveled immediately prior to the accident that she was not upon a road but was in effect crossing the park itself and further that her action in slowing down into second gear, together with her testimony as to her knowledge of the unevenness of the park clearly shows that she knew that she was not upon a safe path. In her own words she said, “As I drove up past the blacktop into the shells into the grass I was looking ahead to see for these unlevel spots and then the car just fell in front of me.” (Italics ours)
Unfortunately Mrs. Picou deliberately chose an unmarked route known by her to be hazardous and ran into a ditch which, though she testified she did not see, she-should have seen in our opinion as same was of such a depth and width pointed out supra tó be readily visible and in doing so she must be held to have been guilty of contributory negligence proximately causing the accident which resulted in the injuries for which she seeks recovery.
The present case fits well within the ruling set forth in 5A, Blashfield, Cycl. of Auto. Law and Pract., 402, which reads as follows:
“The generally accepted rule is that a traveler on a highway cannot deviate from the traveled track and hold the municipality, county, or town liable for injuries sustained at a point outside the beaten way.”
For the above and foregoing reasons it is ordered that the verdict of the jury, together with the judgment rendered herein in connection therewith be reversed and judgment rendered in favor of the defendants and against the plaintiffs, rejecting plaintiffs’ demands, and dismissing this suit at their costs.
Reversed and rendered.